UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAURA ANN CHAMBERLAIN | : | |
| | : | |
|     Plaintiff, | : | |
| | : | DKT No.: |
| v. | : | |
| | : | |
| NIXON PEABODY, LLP, | : | |
| | : | |
|     Defendant. | : | June 11, 2024 |

## COMPLAINT

1. This is a religious discrimination action under Title VII of the Civil Rights Act of 1964 seeking redress for the unlawful termination of Laura Ann Chamberlain based on her conscientious refusal to receive a COVID-19 vaccine. It seeks backpay, front pay, interest on the backpay and front pay, compensatory and punitive damages, attorney's fees, and reinstatement to her position at Nixon Peabody, LLP.

## PARTIES

2. Laura Ann Chamberlain is a New York citizen who resides in Springwater, New York. She is a former Practice Assistant for Nixon Peabody, LLP.

3. Nixon Peabody, LLP is a multi-national law firm headquartered in Boston, Massachusetts. It maintains an office in Rochester, New York at which it employed Chamberlain. Upon information and belief, it employs more than 500 employees in the United States.

## JURISDICTION

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 2201.

5. Venue is appropriate under 42 U.S.C. § 2000e-5(f)(3) because Chamberlain did perform work and would have, in the normal course of her duties for Nixon Peabody, continued to perform work for Nixon Peabody within the Western District of New York.

## FACTUAL ALLEGATIONS

### *Chamberlain's Employment & Termination At Nixon Peabody.*

6. Chamberlain began working for Nixon Peabody in or around September 2000 and worked for them until November 30, 2021.

7. Chamberlain's last formal job title was that of a Practice Assistant, and her actual job duties were primarily of the paralegal vintage.

8. Chamberlain occupied a unique place in Nixon Peabody's Rochester office. By virtue of her experience, she had mastered the process for dealing with various legal and zoning issues pertaining to cellphone tower construction. As such, her duties primarily consisted of assembling the massive packets of documents necessary to facilitate those towers' construction and interacting with various government officials and Nixon Peabody's clients.

9. When COVID-19 became a global pandemic, Nixon Peabody transitioned its staff to working fully remotely. This did not change Chamberlain's responsibility much. She would still assemble the document packets and interact with government officials and Nixon Peabody clients over the phone just as she had usually done before. The only difference is that she worked from home rather than the office.

10. Nixon Peabody began to return its staff to the office in 2021. After several stop-and-starts with implementing a COVID-19 vaccination requirement for its

employees, Nixon Peabody required all of its employees to receive COVID-19 vaccinations unless they qualified for an exemption in September 2021.

11.     Chamberlain holds sincere religious beliefs that rendered her unable to receive the COVID-19 vaccination. Her religious beliefs are essentially as follows:

    a. Chamberlain is religiously opposed to abortion, and her faith prohibits her from participating in or benefiting from an abortion, no matter how remote in time that abortion occurred;

    b. Chamberlain believes in the guidance and direction of God and the Holy Spirit, consults with both God and the Holy Spirit through prayer before making major medical decisions, felt led after prayer not to receive a COVID-19 vaccination, and believes that it would be a sin to not listen to what the Holy Spirit and God instruct her to do;

    c. Chamberlain believes that her body is the temple of the Holy Spirit and that taking a COVID-19 vaccination would pollute it, thus violating her biblical obligation to keep her body pure;

    d. Chamberlain believes primarily in God's healing, His will, and his protection from contagious diseases so, while she does not decline all medical treatments, she brings those decisions to God in prayer first and she believes that taking a COVID-19 vaccination would be contrary to His will in that respect.

12.     All three of the COVID-19 vaccinations available in 2021 utilized cell lines artificially developed from aborted fetal tissue in their testing, manufacture, and/or development.

13. Because of her beliefs, Chamberlain submitted a written request for a religious accommodation from Nixon Peabody's vaccination requirements on September 14, 2021.

14. On September 28, 2021, Nixon Peabody's regional HR director emailed Chamberlain a request for additional information that probed the sincerity of her beliefs. The questions outlined in this request bordered on confrontational and left Chamberlain with the distinct impression that Nixon Peabody was attempting to build a case to deny her medical exemption.

15. Nonetheless, despite being given two days to respond, Chamberlain responded thoughtfully and respectfully on September 30, 2021, explaining her religious beliefs and her past history of medical decisions in general terms.

16. On October 12, 2021, Nixon Peabody's regional HR director emailed her further questions from Nixon Peabody's accommodations committee. These questions continued the confrontational approach from the September 28, 2021 request for information and demanded that Chamberlain provide specific examples of when she relied on God's will to make medical and non-medical decisions, when she declined other vaccinations, and when she declined medications and other medical interventions in the past for any medical condition.

17. Chamberlain responded that same day, essentially declining to provide such specific and detailed information about her life's medical history and setting forth the full text of the First Amendment in response to Nixon Peabody's questions. In this manner, Chamberlain imperfectly expressed a protest that it was impermissible for Nixon Peabody

to go on a fishing expedition to question the sincerity of the religious beliefs that she held based on previous medical decisions.

18. No further discussion appears to have occurred between Nixon Peabody and Chamberlain regarding her request for an accommodation until October 20, 2021 when Nixon Peabody's HR director wrote to Chamberlain to inform her that Nixon Peabody denied her request for a religious exemption.

19. Nixon Peabody did not provide a reason for denying Chamberlain's request, nor did it claim that it could not have accommodated Chamberlain.

***Nixon Peabody Has Provided Religious And Medical Accommodations To Others.***

20. Nixon Peabody has granted religious and medical accommodations to its employees since it imposed its 2021 vaccination requirement and its subsequent booster requirements.

21. As of March 2022, Nixon Peabody, upon information and belief, has provided 5 religious accommodations and 6 medical accommodations to its employees from its initial 2021 vaccination requirement.

22. As of March 2022, Nixon Peabody, upon information and belief, has provided 3 religious accommodations and 4 medical accommodations to its booster requirement.

***Nixon Peabody Could Have Easily Accommodated Chamberlain.***

23. Nixon Peabody could have easily accommodated Chamberlain without substantial cost to itself.

24. Chamberlain had been working remotely prior to her termination for months. She had completed all of her tasks and all of the work requirements placed on her.

25. Nothing about how Chamberlain was working remotely compromised her efficiency in fulfilling her job responsibilities.

26. Nixon Peabody could have continued to let Chamberlain work remotely without incurring a substantial cost to itself.

27. Assuming that Chamberlain's role required her to be in the office, Nixon Peabody could have also transferred Chamberlain to a different role that did not require her to work at its office. In a firm of its size, it employs billing coordinators, timekeepers, and other administrative personnel. Chamberlain's skills and experience would have made her a perfect employee for any of those roles.

28. Even if Nixon Peabody still required Chamberlain to work in its physical office, it still had an array of options to accommodate her religious beliefs. It could have required her to wear a mask at work. It could have required her to submit to regular COVID-19 testing and symptom monitoring. It could have asked her to appropriately socially distance herself.

29. Nixon Peabody, however, did not make an effort to explore any of these accommodations for Chamberlain. Instead, it set out to find a reason to deny her request for a religious accommodation and never articulated what reason that it came up with to deny her request.

### *Exhaustion Of Administrative Remedies*

30. Chamberlain timely filed a complaint with the U.S. Equal Opportunity Employment Commission on or about February 21, 2022.

31. The U.S. Equal Opportunity Employment Commission issued Chamberlain a right to sue letter on March 15, 2024.

**COUNT ONE – RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

32. Paragraphs 1 through 31 are incorporated herein.

33. Title VII prohibits employers from taking adverse employment action against employees because of their religious beliefs.

34. Title VII also requires employers to provide a reasonable accommodation for its employees' religious beliefs, provided that the reasonable accommodation will not impose undue hardship on the conduct of the employer's business.

35. Nixon Peabody discriminated against Chamberlain by refusing to accommodate her religious beliefs pertaining to its COVID-19 vaccination requirement, subjecting her to an inquisitorial process designed to make her as uncomfortable as possible, and terminating her employment.

36. Nixon Peabody had multiple options to reasonably accommodate Chamberlain and did not explore any of those options with her, including the same option that it had provided to her for months prior to imposing its vaccination requirement.

37. Nixon Peabody's refusal to accommodate Chamberlain's religious beliefs constitutes religious discrimination in violation of Title VII.

**COUNT TWO – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

38. Paragraphs 1 through 31 are incorporated herein.

39. Title VII prohibits employers from retaliating against employees who engage in protected conduct, which includes requesting a religious accommodation.

40. Nixon Peabody retaliated against Chamberlain for requesting a religious exemption to its COVID-19 vaccination requirement by making the accommodation

process so invasive of her privacy and so inquisitorial as to require her to object, albeit in an imperfect manner, to the way it was treating her.

41. Nixon Peabody acted in this manner to build a case against Chamberlain's sincere and good-faith request for a religious accommodation and to discourage Chamberlain from pursuing her religious accommodations request.

42. When Chamberlain objected to its conduct, Nixon Peabody discontinued its dialogue with her and denied her accommodation request.

43. As a whole, Nixon Peabody's conduct was retaliatory against Chamberlain because she had requested a religious accommodation to its COVID-19 vaccination requirement and violates Title VII.

## **PRAYER FOR RELIEF**

Wherefore, the Plaintiff seeks the following relief:

A. Reinstatement to her position at Nixon Peabody, LLP;

B. Backpay;

C. Front pay;

D. Compensatory damages;

E. Punitive damages;

F. Costs and attorneys' fees;

G. Any such other and further relief that the Court deems just and reasonable.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

  //s/  Eric S. McDaniel            //s//
ERIC S. MCDANIEL, Esq.
        *Pro hac vice forthcoming*
Malyuk McDaniel Kasper LLC
138 Stow Avenue
Cuyahoga Falls, Ohio 44221
(330) 929-9700
eric@malyuk.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAURA ANN CHAMBERLAIN | : | |
| | : | |
| Plaintiff, | : | |
| | : | DKT No.: |
| v. | : | |
| | : | |
| NIXON PEABODY, LLP, | : | |
| | : | |
| Defendants. | : | June 11, 2024 |

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution, the Plaintiff, Laura Ann Chamberlain, claims her right for a trial by jury.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

 //s/  Eric S. McDaniel           //s//
ERIC S. MCDANIEL, Esq.
  *Pro hac vice forthcoming*
Malyuk McDaniel Kasper LLC
138 Stow Avenue
Cuyahoga Falls, Ohio 44221
(330) 929-9700
eric@malyuk.com